

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-196-CR

LACARLTON DEWAYNE MITCHELL                    APPELLANT

V.

THE STATE OF TEXAS                                    STATE

------------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

### MEMORANDUM OPINION[1]

------------

LaCarlton Dewayne Mitchell appeals his conviction and ninety-nine year sentence for murder. In a single issue, he argues that the trial court abused its discretion by admitting evidence concerning Appellant's gang membership. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## Background

Da'Milla Walker was gunned down in a drive-by shooting in front of a house in Wichita Falls around midnight on June 28, 2005. She was fifteen years old. Three eyewitnesses who were standing on the sidewalk with the victim—Shytinka Combs, Miesha McGee, and Damishia Walker—testified that they and Da'Milla had argued with two other girls, Rafiki Norwood and Shonda Mitchell (Appellant's sister), shortly before the shooting. All three eyewitnesses testified that after the argument, two cars drove slowly down the street together and stopped in front of the house; then the shooting started.

Combs testified that she saw Appellant in the first car but did not see him holding a gun. McGee could not identify the people in the two cars, but she said that shots were fired from both vehicles. Walker testified that she saw Appellant in the second car holding something like a machine gun. Combs and Walker identified Brian Norwood—Rafiki Norwood's brother—as another shooter in one of the cars.

Walker further testified there were five boys outside the house on the porch before the shooting began, including the deceased girl's cousin, Cedric, who was the owner of the house. Walker was sitting on a car and the other girls were leaning against it. When the shooting started, the girls took cover and, when the shooting stopped and the cars left, they ran to a house on

2

another street. They realized Da'Milla was not with them, and they returned to the first house to find her on the ground dead.

During the shooting, over thirty shots were fired at the house from two weapons. Based on the number, type, and location of shell casings found at the scene, police determined that the gunmen fired shots at the house in a way that suggested a drive-by shooting and that shots were also fired from the porch or driveway toward the street. The medical examiner testified that the bullet that killed Da'Milla was a .223 caliber bullet fired from an assault rifle like an M-16. Tarbara Williams, who was serving time on a federal felon-in-possession-of-a-firearm charge at the time of trial, testified that a month prior to the shooting, he had seen Appellant in possession of two assault rifles, including an M-16 or AK-47.

Before trial, Appellant filed a motion in limine regarding evidence of Appellant's gang affiliation, arguing that there was no evidence that the murder was gang-related. The trial court denied the motion. During trial, the State offered testimony from several witnesses concerning Appellant's gang membership and gang violence in Wichita Falls that summer between the KEP gang and the Bloods. Appellant objected to the first instance of such evidence as irrelevant and as having a prejudicial effect that outweighed its probative

3

value. *See* Tex. R. Evid. 402, 403.  The trial court overruled his objections, but it granted him a running objection to all gang-related evidence.

Shytinka Combs testified that the men in the victim's family identified themselves as members of the Bloods gang and that Appellant and Norwood are members of the rival KEP gang.  Darlene York, custodian of records for the Wichita County Sheriff's Department, produced a "special needs" jail housing form on which Appellant identified himself as a member of KEP.  Wichita Falls Police Lieutenant Tommy Smythe, who worked gang intelligence for the department with eighteen years of experience, testified that Appellant was known to police as a member of KEP and that the resident of the house where the shooting occurred and his companions are known to the police as members of the Bloods.  He further testified about the friction between the Bloods and KEP, including family members, and drive-by shootings targeting specific residences with random gunfire.

The jury found Appellant guilty of murder and assessed punishment at ninety-nine years in prison and a $10,000 fine, and the trial court sentenced him accordingly.  This appeal followed.

4

**Discussion**

In his sole point, Appellant argues that the trial court erred by admitting evidence of his gang affiliation because the evidence was irrelevant and unduly prejudicial.

Rule 402 provides that "all relevant evidence is admissible, except as otherwise provided . . . . Evidence which is not relevant is inadmissible." Tex. R. Evid. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401.

Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Shuffield v. State,* 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 127 S. Ct. 664 (2006) (citing *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997)). The burden is on the opponent of the proffered evidence to demonstrate the prejudicial attributes of the evidence and to show how these

attributes substantially outweigh the probative value of the evidence. *Goldberg v. State*, 95 S.W.3d 345, 367 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd), *cert. denied*, 540 U.S. 1190 (2004). A rule 403 analysis should include, but is not limited to, the following factors:

(1) how probative the evidence is;

(2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way;

(3) the time the proponent needs to develop the evidence; and

(4) the proponent's need for the evidence.

*Shuffield,* 189 S.W.3d at 787. The reviewing court should do more than decide whether the trial judge did in fact conduct the required balancing between probative and prejudicial values; the trial court's determination must be reasonable in view of all relevant facts. *Id.*

In this case, the non-gang-related evidence shows that two or more people in two cars fired thirty to forty shots, some from an assault weapon, at a group of teenage girls and a house after the girls had an argument with Appellant's and Norwood's sisters. With this in mind, we turn to the relevance of and the prejudice arising from the gang-related evidence.

Evidence of gang affiliation is relevant to show motive for an allegedly gang-related crime. *Vasquez v. State,* 67 S.W.3d 229, 240 (Tex. Crim. App.

6

2002). The State argued that the gang rivalry between Appellant's gang, KEP, and the Bloods, to which the victim's family belonged, showed the killer's or killers' motive for escalating what had been an argument between fourteen- and fifteen-year-old girls into a fire fight in which over thirty shots were fired and one of the girls was shot dead. In his closing argument to the jury, Appellant's counsel suggested that the surviving girls concocted the entire story about Appellant's involvement in the shooting. Appellant's gang affiliation and the affiliation of the girls' relatives in a rival gang tend to show why Appellant and his fellow gang members would fire so many gun shots at these particular girls and this particular house. We therefore hold that the trial court did not abuse its discretion by overruling Appellant's relevance objection.

We turn now to the rule 403 factors to determine whether the danger of unfair prejudice substantially outweighed its probative value. First, as we have just noted, the evidence was strongly probative of motive for the shooting. *See Shuffeld*, 189 S.W.3d at 787.

Second, the evidence had the potential to impress the jury in an indelible, though not necessarily irrational, way. *See id.* The fact of Appellant's gang membership and the existence of the feud between KEP and the Bloods makes a powerful but rational inferential connection between the argument among the girls and the bloody fusillade that followed. Appellant argues that the mere fact

7

of his gang membership had the potential to lead the jury to the irrational belief that because Appellant was a member of a gang, he must therefore be guilty. In so arguing, Appellant ignores the middle step in the link between gang membership and guilt: Appellant was a gang member; therefore Appellant had a motive to shoot up the family and house of rival gang members; therefore Appellant is more likely to be guilty. We hold that this second factor weighs in favor of admitting the gang-related evidence.

The third factor is the time needed to develop the evidence. *See id.* As the State observes, only about thirty-nine pages of the 402 pages of testimony recorded at the guilt-innocence phase of trial, or about one-tenth of the testimony, concerned gang-related evidence. Other courts, including the court of criminal appeals, have held that greater proportions of trial time spent on extraneous offenses did not militate in favor of their exclusion under rule 403. *See, e.g., Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (holding one-fifth of trial time devoted to extraneous offense was not excessive); *Evans v. State*, No. 14-07-00037-CR, 2008 WL 190053, at *6 (Tex. App.—Houston [14th Dist.] Jan. 22, 2008, no pet.) (mem. op., not designated for publication) (holding one-third of trial devoted to extraneous offense was not excessive). We likewise hold that one-tenth of the testimony

was not an excessive amount to spend developing the gang-related evidence and that this factor does not weigh against admission of the evidence.

Finally, the State's need for the evidence was great. Absent the gang-related evidence, the violence of the attack makes little sense and leaves the motive open to speculation. Appellant argues that the most consistent way of looking at the evidence is that the motive for the killing was personal and arose from the girls' argument. But while the argument may have been the spark that lit the fire, it does not explain the ensuing conflagration. The State was entitled to show motive, i.e., why the argument escalated into a gun fight where one side fired over thirty shots, and the gang evidence provided the reason.

Having considered the applicable rule 403 factors, we hold that the trial court did not abuse its discretion by admitting the gang-related evidence over Appellant's relevance and rule 403 objections. We therefore overrule Appellant's sole issue and affirm the trial court's judgment.

PER CURIAM

PANEL: GARDNER, J.; CAYCE, C.J.; and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 23, 2008