**Affirmed and Memorandum Opinion filed February 2, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00343-CR

---

**CHODWI DEANDRE MCPETERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1265637**

---

## M E M O R A N D U M   O P I N I O N

Appellant Chodwi Deandre McPeters appeals his conviction for murder. A jury found him guilty and assessed his punishment at life in prison and a $10,000 fine. In a single issue on appeal, appellant contends that the trial court erred in admitting autopsy photographs of the complainant's stab wounds. We affirm.

### Background

On June 3, 2010, appellant stabbed Jamann Anderson to death with a knife. There was evidence at trial that Anderson was the new boyfriend of the mother of appellant's

eight-year-old daughter. Appellant, the child ("A.P."), and the child's mother, Leighann Pollard, all testified regarding the events surrounding June 3. Their versions disagree sharply, with appellant describing an act of self-defense, and Pollard and A.P. describing an unprovoked attack by appellant on Anderson.

Appellant testified that on June 2, 2010, he took A.P. on some errands and then watched her at Pollard's apartment while Pollard attended a class. Pollard returned to the apartment around 11 p.m. and told appellant that she didn't think he should see A.P. any more. He said goodbye to A.P. and drove away but, according to appellant, Pollard later called him and apologized, and they arranged for appellant to return to Pollard's apartment the next morning. Appellant further stated that he arrived at the apartment around 8:30 a.m. on June 3, and he and Pollard became "[s]exually intimate." He stayed at the apartment until around 2 p.m., when Pollard and A.P. left for a hair appointment. Appellant later called Pollard, and she agreed to let him come by the apartment and tuck A.P. into bed.

When appellant arrived, A.P. answered the door and appellant entered the apartment and saw Anderson on the couch. Appellant told Anderson that Anderson should leave, and Anderson said appellant should leave. Anderson then stood up from the couch and walked to the back of the apartment while appellant walked to a bookshelf to select a book to read to A.P. Anderson subsequently returned carrying a knife. Appellant confronted him, and the two struggled for control of the knife. Although appellant said that he did not specifically recall stabbing Anderson, he knew that he must have done so. Afterwards, Pollard shook him and told him to get out of there. Appellant left the apartment and was later arrested at a Wal-Mart. Appellant indicated that he feared for A.P.'s safety at the time of the encounter and that his finger was nearly severed in the fracas.

In contrast, Pollard testified that in March 2010, she asked appellant to move out of her apartment. When appellant failed to comply, she asked a police officer to go to her apartment and talk to appellant about leaving. When Pollard and the officer arrived, the

2

lights were out and appellant was in a closet. On June 2, 2010, appellant became upset at Anderson's presence in Pollard's apartment and said that he did not want Anderson to be around A.P. Anderson replied, "I understand . . . . It will be okay." Pollard later told appellant that the situation was "not going to work." In the evening of June 3, 2010, Pollard, A.P., and Anderson were watching television from the couch in Pollard's apartment. At some point, A.P. got up to get a blanket from a closet. When A.P. opened the closet door, appellant ran out carrying a knife. He said, "I told you not to come around my family," and stabbed Anderson repeatedly with the knife. Pollard attempted to intervene, but appellant kept knocking her down. Appellant then left the apartment.

A.P. testified that on the night Anderson got hurt, she, Pollard, and Anderson were on the couch watching television when A.P. got up to get a blanket out of a closet. When she opened the closet, she saw appellant inside. Appellant exited the closet and began stabbing Anderson "a lot." A.P. explained that Anderson was not able to fight back because he probably did not even see appellant before appellant attacked him. Pollard was injured when she attempted to stop appellant.

Dr. Ana Lopez, an assistant Harris County medical examiner, testified regarding the autopsy she performed on Anderson. She described finding 34 "sharp force injuries" on Anderson, the vast majority being to the back of his body, including six to the back of his neck alone. The wounds were as deep as 4 1/2 inches and caused injury to numerous internal organs as well as his spinal cord. During her testimony, Lopez repeatedly referenced a series of thirteen photographs admitted into evidence over defense objection that they were more prejudicial than probative.[1] Lopez indicated that the purpose of referencing the photographs was to aid the jury in understanding her testimony and findings. The cover of Lopez's autopsy report, which was also admitted into evidence, listed the cause of death as "homicide."

---

[1] Defense counsel objected to thirteen out of fourteen offered photographs taken at the time of Anderson's autopsy.

*Discussion*

As stated, in his sole issue on appeal, appellant contends that the trial court erred in admitting the thirteen autopsy photographs because they were more prejudicial than probative. Under Texas Rule of Evidence 403, a photograph is admissible if it has probative value that is not substantially outweighed by the photograph's inflammatory nature. Tex. R. Evid. 403; *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Analysis under the rule should generally consider: (1) how probative the evidence is, (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way, (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Id.*

A number of additional factors may also be relevant in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, including: the number of photographs offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up images, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. *Williams*, 301 S.W.3d at 690 (citing *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991)). Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Id.* Pre-autopsy photographs are also typically admissible if they aid the jury in understanding the victim's injuries. *See Matamoros v. State*, 901 S.W.2d 470, 476 (Tex. 1995). The admissibility of photographs over an objection is within the trial judge's sound discretion. *Williams*, 301 S.W.3d at 690.[2] The party objecting under

---

[2] Appellant suggests that the trial judge here did not apply the proper standard in considering admission of the photographs because the judge commented immediately before ruling that the photographs were not duplicates of other images. The mere fact that the judge made this observation, however, does not indicate that the judge did not properly undertake the Rule 403 analysis before making her ruling on admissibility.

Rule 403 has the burden to show that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Ho v. State*, 171 S.W.3d 295, 301-02 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

The thirteen photographs at issue here are indeed gruesome; however, they show "no more than the gruesomeness of the injuries inflicted by appellant." *Id*. at 691.[3] The photographs were 8" x 10" and in color. Some were close ups, and some showed Anderson naked so that the wounds on his back could be clearly seen. Thus, many of the additional factors listed in *Long* and *Williams* are present in this case, however, that fact alone did not render the photographs inadmissible.

Appellant argues that since both sides agreed that appellant killed Anderson by stabbing him multiple times, the photographs were not probative of any disputed issue. As mentioned above, the photographs here were referenced by Dr. Lopez in her testimony to assist the jury in understanding the injuries sustained by Anderson. *See Williams*, 301 S.W.3d at 693 (holding that the probative value of autopsy photographs was not substantially outweighed by the danger of unfair prejudice in part because medical examiner used them in explaining the victim's injuries). The nature of Anderson's wounds, and thus the photographs depicting those wounds, also were relevant to the jury's determination of appellant's claim of self-defense. *See id*. (holding photographs were admissible as relevant to rebut claim of self-defense). Indeed, the prosecutor urged during closing argument that the arrangement of the wounds on Anderson indicated an attack by appellant and not that the wounds were inflicted by appellant in self-defense.

---

[3] In a couple of the photographs, forceps were used to hold particular wounds open. Dr. Lopez testified that this was done to reveal the depth of those wounds. Again, while gruesome, these photographs show the damage inflicted by appellant and not additional or deeper or larger cuts made during the autopsy. *See Narvaiz v. State*, 840 S.W.2d 425, 429 (Tex. Crim. App. 1992) ("It is also relevant for the trial court to consider whether the body as photographed has been altered since the crime in some way (*e.g.*, by autopsy) that might enhance its gruesomeness to the defendant's detriment."); *see also Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (holding photograph of cross-sectioned tongue was admissible because it showed an injury that was not otherwise visible).

5

Appellant further asserts that the State had no need to introduce the photographs taken at the time of the autopsy because photographs of Anderson's body taken at the crime scene were also available, admitted, and not as gruesome. *See Long*, 823 S.W.2d at 274-75 (holding trial court erred in admitting certain autopsy photographs in part because they were cumulative of less-gruesome crime scene photographs). The crime scene photographs, however, show Anderson only from a distance and lying on his back. As Dr. Lopez testified, and the autopsy photographs revealed, the vast majority of the stab wounds were to Anderson's back; thus, the crime scene photographs would not have shown, and did not show, these wounds. In other words, the autopsy photographs were not cumulative of the crime scene photographs in this case.

Appellant has failed to meet his burden of demonstrating that the photographs in question were more prejudicial than probative. Accordingly, we overrule his sole issue.

We affirm the trial court's judgment.


/s/    Martha Hill Jamison
Justice


Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).

6