**AFFIRM; and Opinion Filed July 21, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00686-CR

**TYMOTHY PATRICK PFEIFFER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-83181-2015**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Brown
Opinion by Justice Brown

Tymothy Patrick Pfeiffer appeals his jury conviction for capital murder. In two points of error, appellant contends (1) the evidence is legally insufficient to support his conviction, and (2) the trial court abused its discretion in admitting testimony translating "coded private language" on a jail call between him and his brother. For the following reasons, we affirm appellant's conviction.

A grand jury indicted appellant for capital murder alleging he knowingly and intentionally caused the death of Juan Rodriguez while in the course of committing or attempting to commit robbery.

At trial, Ouida Knotts testified that, on the afternoon of August 1, 2015, she was preparing lunch in her Frisco apartment when she heard a cry for help. She thought a person had fallen down the apartment complex's exterior stairs and went to investigate. Knotts found Juan

Rodriguez lying on the ground outside an apartment on the second-floor. Rodriguez told Knotts he had been shot, and she called 911. At the 911 operator's direction, Knotts asked Rodriguez if he knew who shot him. Rodriguez responded "Tym Pfeiffer," identifying appellant by name. A few minutes later, Rodriguez stopped breathing. Paramedics arrived and transported him to the hospital, where he was pronounced dead. The cause of death was a single gunshot wound to the chest.

At the time of his death, Rodriguez did not have a wallet on his person. Nor did police find a wallet when they searched Rodriguez's apartment. Police did, however, find narcotics and over $12,000 in cash in the apartment, leading police to conclude Rodriguez was a drug dealer. Those items were found in a drawer, in Rodriguez's bedroom.

Pursuant to a subpoena, police obtained cell phone data from appellant's cell phone carrier. Using that data and a description of appellant's vehicle, police tracked appellant to a Dallas motel, where he was arrested. At the time of his arrest, appellant was with a man police identified as Anthony Murphy.

After seizing appellant's cell phone, police obtained his text messages. They showed that, at about 2:30 a.m. on July 31, roughly 36 hours before the murder, appellant sent a text to a female friend named Teresa proclaiming, "These motherf---ers ain't about shit[.] I need a gun." Teresa suggested that appellant, "Go see B." Several hours later (mid-morning on July 31) appellant texted Teresa "I really need to get to Carrollton[.] I really need the strap."[1] He added "I'm really doing this and everyone thinks I'm bullshitten [sic] . . . I'm done playing I'm doing this and we are going to Oklahoma for a few days." After Teresa agreed to drive, he said, "All I ask is you trust me and help me help us." He also told her "the sooner I . . . get the strap the sooner we'll have some good money." Shortly thereafter, appellant sent a text to another person

---

[1] Evidence at trial showed that "strap" is a slang term for a gun.

stating, "I got a pistol I'm so serious." The next day, Rodriguez was shot and killed. But before he died, he identified appellant as the individual that shot him.

With the use of cell phone data, the State showed that, in the hours immediately following the murder, Rodriquez's and appellant's cell phones travelled at the same time to the same locations. One of those locations was Farmer's Branch. At about the same time the cell phones were in Farmers Branch, Rodriguez's bank records showed that someone tried to use Rodriguez's debit card at an ATM machine at a 7-Eleven in Farmers Branch. Surveillance footage from that 7-Eleven showed that person was Anthony Murphy.

The cell phone data also showed that, a few hours after Murphy's unsuccessful attempt, appellant's and Rodriguez's cell phones were both in the vicinity of Harry Hines Blvd. in Dallas. At trial, Aide Carter testified that same day, he was working at a pawn shop on Harry Hines when Anthony Murphy came in and sold a cell phone. Carter said Murphy also tried to pawn a black Coach wallet, but Carter rejected the wallet because there was an insurance card inside with another person's name on it. Carter said that name was Juan Rodriguez or Ramirez.

Detective Wade Hornsby testified that, in the course of his investigation, he reviewed appellant's jail calls and that one call, between appellant and his brother, stood out. Hornby explained that, when appellant and Jeremy began talking about the offense, they began to disguise their speech. After listening to the call repeatedly, Hornby realized the brothers were using a form of "Pig Latin," adding "A-G" before vowels.

The recording supports Hornsby's conclusions. Specifically, after appellant and Jeremy began discussing the offense, Jeremy asked appellant what sounds like "waygere yaygou thaygere?," to which appellant's responded, "Yayges." When the State asked Hornsby what he believed the brothers were saying, appellant objected that Hornsby was not certified in "Pig Latin." The trial court overruled appellant's objection and Hornsby testified that he believed

Jeremy was asking appellant, "where you there," and that appellant responded, "yes." After the recording continued, Jeremy can be heard saying was sounds like, "haygave thaygay faygound a waygeopaygon?" Hornsby testified, again over objection, that he believed Jeremy asked appellant, "Have they found a weapon." Appellant responded in simple English, "No. They won't."

After hearing the evidence, the jury found appellant guilty of capital murder.

In his first point of error, appellant asserts the evidence is legally insufficient to support his conviction . When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Temple*, 390 S.W.3d at 360. The jury may draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319.

As applicable to this case, a person commits capital murder if he intentionally or knowingly causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PEN. CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (West 2011). When a person is charged with committing murder in the course of committing a robbery, evidence is sufficient to prove the aggravating element if it shows the intent to obtain or maintain control of property was formed before or contemporaneously with the murder. *Sheffield v. State*, 189 S.W.3d 782, 791 (Tex. Crim. App. 2006). The jury may infer the requisite intent to rob from circumstantial evidence. *Id.*

Appellant first asserts the evidence is legally insufficient to support his conviction because the State failed to show he intended to kill Rodriguez. It is well-settled the specific

–4–

intent to kill may be inferred from the use of a deadly weapon. *Jackson v. State*, 115 S.W.3d 326, 329 (Tex. App.—Dallas 2003), *aff'd*, 160 S.W.3d 568 (Tex. Crim. App. 2005); *Flanagan v. State*, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984) (op. on reh'g). In fact, "[i]f a deadly weapon is used in a deadly manner, the inference is almost conclusive that [the defendant] intended to kill. . . ." *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986); *see also Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993). Appellant does not dispute the evidence is sufficient to show he caused Rodriguez's death by shooting him in the chest with a firearm. The jury could infer from that evidence that appellant intended to kill Rodriguez.

Appellant next asserts the evidence is legally insufficient to show the murder occurred in the course of a robbery. Again, we disagree.

Appellant's text messages the day before the murder show he was trying to obtain a gun and that he intended to use it to get some "good money." The following day, Rodriquez was shot in the chest and his wallet and cell phone were taken. Rodriguez named appellant as the shooter. Shortly after Rodriguez was shot, Murphy, who appellant was with at the time of his arrest, tried to use Rodriguez's debit card, tried to sell Rodriguez's wallet, and did sell Rodriguez's cell phone.

Appellant nevertheless contends the evidence is legally insufficient to show he murdered Rodriguez in the course of a robbery because he did not take the $12,000 in cash or narcotics police found in Rodriguez's bedroom. However, that evidence does not negate the evidence showing appellant both intended to rob Rodriguez and did, in fact, rob him. We overrule appellant's first point of error.

In his second point of error, appellant asserts the trial court abused its discretion in admitting Hornsby's testimony translating statements he and his brother made on a jail call. Appellant asserts Hornsby's testimony was not admissible because he was not qualified to

translate "private coded language" and the State failed to show Hornsby was otherwise familiar with that language.

A witness need not be qualified as an expert to testify to opinions based on their own perceptions when their opinions do not require any special skill, knowledge or training. *Osbourn v. State*, 92 S.W.3d 531, 535-39 (Tex. Crim. App. 2002). In other words, it is only when opinions require specialized skill or knowledge that a witness must be qualified as an expert. *See id.* at 537.

Hornsby testified that, after listening to the recording of the call repeatedly, he realized the brothers were speaking in a form of Pig Latin, adding A-G before the vowels in words. Once he detected the pattern, he was able to determine what words they were saying by simply removing the added syllables. In other words, appellant and his brother were not speaking a private language; they were speaking English, adding syllables to English words, based on a common pattern. To form his opinion, Hornsby may have had to listen to the tapes repeatedly, but he did not need any specialized skill, knowledge or training. We overrule appellant's second point of error.

We affirm the trial court's judgment.

/Ada Brown/
_____
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

160686F.U05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TYMOTHY PATRICK PFEIFFER,
Appellant

No. 05-16-00686-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 296-83181-2015.
Opinion delivered by Justice Brown. Justices
Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of July, 2017.