COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-06-407-CR

        2-06-408-CR

EVERETT CHARLES HINSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Everett Charles Hinson appeals his convictions for sexual assault of a child and aggravated sexual assault of a child.  In three points, Hinson argues that the evidence is legally and factually insufficient to support his convictions and that the trial court abused its discretion by overruling his rule 403 objection and admitting certain testimony that was more prejudicial than probative.  We will affirm.

II.  Factual and Procedural Background

Hinson was the pastor of a church attended by Lisa R., her children, and two of Lisa’s sisters, who lived with Lisa at the time.  They attended Hinson’s church from 1998 until 2002.  In late 2002, Lisa caught Hinson at her house uninvited.  Hinson and Lisa’s thirteen-year-old daughter, M.W., were watching an R-rated movie about a sexual relationship between a young girl and an older man.  Lisa confronted Hinson about the incident and soon thereafter left the church.  

Two years later, in 2004, Lisa noticed that M.W. was aggressive and withdrawn.  In an attempt to discover the source of the change, Lisa rummaged through M.W.’s room and discovered a letter that M.W. had written to a friend.  In this letter, M.W. alleged that her former pastor had sexually molested her.  Lisa confronted M.W. with the letter and asked if Hinson had ever molested her.  M.W. confessed that Hinson had molested her several times while they attended his church.  

After discovering M.W.’s letter, Lisa called her youngest sister, R.W., who had lived with Lisa and her children when R.W. was between the ages of twelve and sixteen.  During that phone call, R.W. stated that Hinson had similarly molested her when she had lived with Lisa. 

The State tried Hinson on two counts of sexual assault of a child and three counts of aggravated sexual assault of a child.  After a trial, the jury found Hinson guilty of two offenses—one count of sexual assault of a child and one count of aggravated sexual assault of a child—and the trial court sentenced Hinson to confinement for fifteen and forty years, respectively.  This appeal followed.

III.  Legally and Factually Sufficient Evidence

In his first and second points, Hinson argues that the evidence is legally and factually insufficient to support the verdict.  Specifically, Hinson contends that the State failed to prove that Hinson actually committed the alleged offenses.  

A. Legal Sufficiency Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Clayton v. State
, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Clayton
, 235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  Instead, we “determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.”  
Hooper v. State
, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.  
Jackson
, 443 U.S. at 326, 99 S. Ct. at 2793; 
Clayton
, 235 S.W.3d at 778.

B. Factual Sufficiency Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”
 
 Id
.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.”  
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id
. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground.  
Goodman v. State
, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); 
Johnson
, 23 S.W.3d at 7.

C. Analysis of the Evidence Presented

Hinson claims that the evidence failed to show that he actually committed the offenses against M.W. and R.W.  He contends that the State’s failure to present any medical testimony establishing that he sexually assaulted the two girls and the lack of physical evidence of sexual assault on either of the girls made the evidence so weak that the jury should have had a reasonable doubt as to whether he committed the offenses. 

The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault. 
Tex. Code Crim. Proc. Ann.
 art. 38.07 (Vernon 2005); 
see Garcia v. State
, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978).  Courts give wide latitude to testimony given by a child victim of sexual abuse.  
See Villalon v. State
, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).  There is no requirement that the victim’s testimony be corroborated by medical or physical evidence.  
Garcia
, 563 S.W.2d at 928; 
Kemple v. State
, 725 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1987, no pet.); 
Kirsch v. State
, No. 02-06-00031-CR, 2007 WL 704905, at *3 (Tex. App.—Fort Worth Mar. 8, 2007, pet. ref’d) (mem. op.) (not designated for publication).

To convict Hinson of sexual assault of a child as alleged in the indictment, the State was required to prove that Hinson intentionally or knowingly caused his mouth to touch the sexual organ of R.W.  
See 
Tex. Penal Code Ann.
 § 22.011(2)(C) (Vernon Supp. 2007).  Furthermore, to convict Hinson of aggravated sexual assault as alleged in the indictment, the State was required to prove that Hinson intentionally or knowingly caused the penetration of M.W.’s sexual organ by any means.  
See id.
 
§ 22.021(B)(i).

At trial, R.W. testified that in the summer of 2001, when she was fifteen years old, Hinson came over to her house when Lisa, her older sister, was at work.  M.W. and M.W.’s younger brother were sleeping, and R.W. was taking a shower.  R.W. testified that Hinson came in the house, went into the bathroom where R.W. was showering, ordered her to turn around so that her front was facing him, and penetrated her sexual organ with his tongue.  

M.W. additionally testified about Hinson’s sexual molestation of her.  
Specifically, M.W. testified that after R.W. moved out, there were several occasions when Hinson would come over to M.W.’s house while M.W.’s mother was at work, would order her younger brother outside, crawl into bed with her, and put his finger inside her sexual organ.  M.W. additionally testified that, on one occasion, Hinson picked her up from school, took her to a hotel, and again put his finger inside her sexual organ.
(footnote: 2)  M.W.’s younger brother verified that Hinson came to their house when their mother was not present, ordered him to go outside, and told him not to tell his mother that Hinson had stopped by.  On one occasion, the brother testified that he attempted to come back inside to get a drink and that Hinson would not allow him back into the house. 

The jury also heard from Lisa that, although she had given Hinson’s wife a key to the house in case of an emergency, Hinson was never invited to go to her house unattended.  Lisa also recounted an instance when she came home unexpectedly and caught Hinson on his way into the house at a time when the children were there alone.  Hinson, according to Lisa, acted startled, jumped back into his vehicle, and, after a brief conversation, hurriedly left. 

The State additionally presented the testimony of a lady whose husband went to Lisa’s house, at Lisa’s request, to install a security system.  The wife, who was with her husband at the time, testified that, while they were installing the security system, they opened the garage door to the house and discovered Hinson’s vehicle parked in the garage (they also attended Hinson’s church and knew what his vehicle looked like).  R.W., M.W., and M.W.’s younger brother explained that Hinson had again come over to the house and had hidden in a back room when the security installation people arrived because he did not want them to discover him.  The jury also heard the testimony of one of R.W.’s friends who said that Hinson was at the house when Lisa was not there and that Hinson asked the friend not to tell anyone that he had been there. 

In his defense, Hinson elicited testimony from M.W. that she had spoken with a CPS worker approximately one year before her mother had discovered the letter she had written and, in response to the CPS worker’s questions, said that Hinson had never touched her.  M.W. explained that she was scared and did not want to recount in court what Hinson had done to her.  Also in his defense, Hinson presented his wife’s testimony that R.W., M.W., and M.W.’s younger brother were afraid of their mother, Lisa, and that Lisa had put the children up to testifying against Hinson as a way to get back at the Hinsons for the dispute causing Lisa’s departure from the church two years earlier. 

In evaluating all of this evidence, the testimony of R.W. and M.W. alone was sufficient to support Hinson’s convictions.  
See 
Tex. Code Crim. Proc. Ann.
 art. 38.07; 
Garcia
, 563 S.W.2d at 928 (stating that the victim’s testimony, standing alone, was sufficient evidence of penetration).  Furthermore, contrary to Hinson’s assertions, the girls’ testimony did not need corroboration by medical or physical evidence.  
See Kemple
, 725 S.W.2d at 485; 
Kirsch
, 2007 WL 704905, at *3.  R.W’s and M.W.’s testimony was, however, factually corroborated by M.W.’s younger brother, Lisa, R.W.’s friend, and one of the security system installation people, all of whom indicated that Hinson was going to Lisa’s house uninvited, at a time when only the children were home; ensuring that he was alone with either R.W. or M.W.; and trying to keep his visits a secret.

Therefore, viewing all the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Hinson committed the alleged crimes—intentionally or knowingly causing the sexual organ of R.W. to contact Hinson’s mouth and causing the penetration of M.W.’s sexual organ by inserting his finger.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
 
v. State
 165 S.W.3d 691, 693 (Tex. Crim. App. 2005); 
Kirsch
, 2007 WL 704905, at *4 (holding that a child’s testimony constituted legally sufficient evidence to support aggravated sexual assault of a child conviction).  Viewing all of the evidence in a neutral light that favors neither party, we hold that the evidence supporting the conviction is not so weak that the fact-finder’s determination is clearly wrong and that the conflicting evidence does not so greatly outweigh the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
See Watson
, 204 S.W.3d at 414-15, 417; 
Drichas
, 175 S.W.3d at 799; 
Johnson
, 23 S.W.3d at 11;
 Kirsch
, 2007 WL 704905, at *3
 (holding a child’s testimony factually sufficient to support an aggravated sexual assault of a child conviction).

Thus, we hold that the evidence is legally and factually sufficient to support Hinson’s convictions for sexual assault of a child and aggravated sexual assault of a child.  We overrule Hinson’s first and second points.

IV.  Prejudicial Evidence

In his third point, Hinson complains that the trial court abused its discretion by admitting testimony from Lisa in violation of Texas Rule of Evidence 403.  

A. Standard of Review

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion.  
Moses v. State
, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  As long as the trial court’s ruling was within the zone of reasonable disagreement, the appellate court should affirm.  
Id.
; 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g). The trial court’s decision must be reasonable in view of all the relevant facts.  
Santellan v. State
, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Manning v. State
, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003); 
Mata v. State
, No. 02-05-00432-CR, 2007 WL 1649892, at *6 (Tex. App.—Fort Worth June 7, 2007, pet. ref’d) (mem. op.) (not designated for publication).

B. Rule 403

Evidence is relevant when it has a tendency to make the existence of any fact more probable or less probable than it would have been without the evidence.  
Tex. R. Evid.
 401.  Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice.  
Tex. R. Evid.
 403; 
Shuffield v. State
, 189 S.W.3d 782, 787 (Tex. Crim. App.), 
cert. denied
, 127 S. Ct. 664 (2006).  The trial court is in a superior position to gauge the impact of relevant evidence in making its determination under rule 403.  
See Mozon v. State
, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); 
Mata
, 2007 WL 1649892, at *6.

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.  
Shuffield
, 189 S.W.3d at 787.  Factors that should go into an analysis under rule 403 include how probative the evidence is; the potential of the evidence to impress the jury in some irrational but nevertheless indelible way; the time the proponent will need to develop the evidence; and the proponent’s need for the evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to help establish this fact and is this fact related to an issue in dispute.  
Santellan
, 939 S.W.2d at 169; 
Mata
, 2007 WL 1649892, at *6.

C. Application

During trial, after Lisa had finished testifying about walking in on Hinson and M.W. watching an inappropriate movie and how she had confronted Hinson about the incident, she discussed how, immediately following this confrontation, she was kicked out of the church.  Lisa said that on the following Sunday after church, Hinson’s secretary asked Lisa to go to Hinson’s office.  At this point, the State’s attorney asked to approach the bench and told the trial court and Hinson’s attorney that she was about to elicit testimony from Lisa that Hinson had told her, during this meeting, to commit suicide.  Hinson’s attorney objected that the testimony was not relevant and that it would violate rule 403.
(footnote: 3)  The trial court performed a balancing test and determined that the testimony was “more probative than it is prejudicial and since it is more probative on the balancing test we should put it in.”  

After the trial court’s ruling, Lisa testified before the jury that Hinson and his wife were waiting for her in Hinson’s office and that they told her that they were going to take away her children, her house, her business, and her car if she did not sign some papers that they had drawn up.  When she refused, she said that Hinson “asked me to shoot myself in the head with my mother’s gun.”  Then, Hinson’s wife told her not to come to church anymore—that she and her family were excommunicated.  

The disputed statement was probative of Hinson’s state of mind and consciousness of guilt.  
Accord Roberts v. State
, 795 S.W.2d 842, 845 (Tex. App.—Beaumont 1990, no pet.) (stating that attempts by defendant to suppress testimony of a witness is generally admissible as conduct showing consciousness of guilt tending to prove commission of the act charged).  Such a statement, therefore, made it more probable that Lisa had caught Hinson doing something wrong and that Hinson, knowing that he had been caught, threatened Lisa and tried to use his sway over her as her pastor to convince her to commit suicide.  
Accord id. 
at 844-45 (stating that defendant’s letter—threatening the victim of aggravated sexual assault with incarceration for bigamy and tax evasion if she did not get the district attorney to drop charges against him—was an attempt to suppress testimony of a witness).  Although this testimony was somewhat inflammatory, it was not so inflammatory that it would have impressed the jury in some irrational, yet indelible way. 
 Any inflammatory effect was outweighed by the statement’s probative value in establishing that Hinson did, in fact, commit the offenses at issue and was attempting to cover up the offenses after Lisa became suspicious of his behavior.  
Accord id. 
at 845 (holding that vulgar allegations in letter that appellant complained of were expressions of threat to the complainant and thus had probative value); 
Torres v. State
, 794 S.W.2d 596, 598, 600 (Tex. App.—Austin 1990, no pet.) (holding that appellant’s phone calls from jail—in which he threatened his wife with going to jail and taking away her military benefits if she did not drop the charges against him for sexually assaulting her child—were admissible because their probative value substantially outweighed any unfair prejudice).

Therefore, starting from the presumption that this relevant evidence was more probative than prejudicial and viewing all of the relevant facts, we cannot say that the trial court acted outside the zone of reasonable disagreement by allowing Lisa’s testimony.  
See Shuffield
, 189 S.W.3d at 787; 
Moses
, 105 S.W.3d at 627.  Accordingly, we overrule Hinson’s third point.

V.  Conclusion

Having overruled all three of Hinson’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE 

PANEL B: DAUPHINOT, HOLMAN, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 24, 2008

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Both R.W. and M.W. gave explicit testimony about approximately ten separate occasions on which Hinson allegedly, in some form, sexually molested them.  However, because the jury found Hinson guilty only on the charges alleging violations of penal code sections 22.011(2)(C) and 22.021(B)(i) as set forth in the indictment, we will discuss the facts relating only to those offenses.

3:
Hinson does not dispute the relevance of the testimony on appeal.