NO. 07-07-0440-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 10, 2008

______________________________

MORDEL DISHAUN STEBBINS, 

Appellant

v.

THE STATE OF TEXAS, 

Appellee

_________________________________

FROM THE 47
TH
 DISTRICT COURT OF RANDALL COUNTY;

NO. 18286-A; HON. HAL MINER, PRESIDING

_______________________________

Memorandum Opinion

_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Mordel Dishaun Stebbins appeals his conviction for delivering a controlled substance.  He asserts that the trial court erred in admitting evidence of extraneous offenses in violation of Rules 403 and 404(b) of the Texas Rules of Evidence.  We affirm the judgment. 

Background

Appellant was convicted upon the testimony of undercover police officer, Vernon Wilson, to whom he delivered cocaine on September 24, 2006.  Undercover police officer David Ponce witnessed the transaction.  During the testimony of Wilson, appellant’s counsel asked him about whether the current offense was the only time appellant had been charged with any kind of hand-to-hand transaction.  Wilson answered “yes.”  Later, the following exchange took place between the same counsel and the officer:

Q.  When did you first learn Mordel Stebbins’ identity?

A.  It was around the time we were making the buys from him.

Q.  Now, Agent, 
earlier you testified you made one drug buy from [appellant].  Right?  So I would ask that we - - that we not stretch that unless we’re going to change - - 

(Emphasis added).  On re-direct, the State asked Wilson whether the incident forming the basis of prosecution at bar was his only contact with appellant, to which question appellant objected.  The State argued that appellant had opened the door to the evidence of prior drug transactions between him and Wilson by his prior statements and his defense founded upon lack of identity.  The trial court overruled appellant’s objection and admitted the evidence that Wilson purchased drugs from appellant the first time he met him, he purchased drugs from appellant’s girlfriend Crystal on September 16, 2004, just prior to which Wilson saw appellant going into Crystal’s apartment, and he spoke to appellant again on December 7, 2005, and was told if he needed any more drugs to contact Crystal.

Law and Its Application

We review the trial court’s admission of the evidence under the standard of abused discretion.  
Moses v. State, 
105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  That is, if the decision fell within the zone of reasonable disagreement, it was not wrong.  
Montgomery v. State, 
810 S.W.2d 372, 391 (Tex. Crim. App. 1991).  

As previously mentioned, the issue before us deals with the admission of evidence illustrating extraneous offenses.  Such evidence may be admitted at trial under Rule 404(b) of the Rules of Evidence to show identity when identity is in question.  
Tex. R. Evid.
 404(b).  Moreover, matters of identity may be raised on cross-examination by the defendant.  
Page v. State, 
213 S.W.3d 332, 336 (Tex. Crim. App. 2006). 
  Yet, even if relevant, the evidence may be excluded under Rule 403 if its probative value is substantially outweighed by its propensity to cause undue prejudice or confusion.  
Casey v. State, 
215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  

In cross-examining Wilson, appellant asked him about whether he knew if appellant’s name was incorrect in the indictment, when he first identified appellant, whether he had the narcotics passed during the sale checked for fingerprints, whether he had a photograph of appellant, why appellant was not arrested at the time of the transaction in question, and how many drug deals Wilson had made in the last several years.
(footnote: 1)  These inquiries raised the issue of whether the officer remembered and could identify the person involved in this particular drug transaction.  
See Smith v. State, 
211 S.W.3d 476, 479 (Tex. App.–Amarillo 2006, no pet.) (stating that by attempting to discredit the testimony of the confidential informant and the police officer identifying the defendant as the seller, the defendant put the issue of identity into play).

Additionally, the questions propounded by appellant raised the suggestion that the officer’s contact with appellant was limited to one instance when in fact the instances were several.  So, because the officer’s ability to identify appellant as the seller was in dispute, the extraneous offenses tended to illustrate more than a passing acquaintance between the officer and appellant, and because the nature of the relationship and the interaction between the two bolstered the inference that the officer could identify appellant, the evidence was admissible under Rule 404(b).       

While it may be true that before evidence of an extraneous offense can be used to establish identity, the extraneous offenses must be so similar to the offense charged that the offenses may be marked as the accused’s handiwork, 
Lane v. State, 
933 S.W.2d 504, 519 (Tex. Crim. App. 1996), however, appellant did not object to the evidence on that basis.   Having failed to do so, that ground was waived.  
See Sharp v. State, 
210 S.W.3d 835, 839 (Tex. App.–Amarillo 2006, no pet.) (stating that when a particular ground went unmentioned below, it is not preserved for review).
(footnote: 2)  

As for appellant’s contention that the relevance of the evidence was substantially outweighed by its alleged prejudice, we consider four factors when determining if this was true.  The first is whether the evidence compellingly made a fact of consequence more or less probable.  Next, we assess the potential to which the evidence could impress the jury in some irrational, yet indelible, way.  Then we consider the amount of time spent developing the evidence.  Finally, the State’s need for the evidence must also be weighed.  
Lane v. State, 
933 S.W.2d at 520.  

Again, we note that identity was at issue, the evidence in question tended to show that the witness had the opportunity to observe and listen to appellant on more than one occasion, the trial court instructed the jury to only consider the evidence for purposes of determining motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and the testimony took up only five pages of the trial transcript.  We further note that it tended to rebut the insinuation raised by appellant that he had not engaged in drug activity before.  Given these circumstances, we opine that the trial court’s implicit conclusion that the probative value of the evidence was not substantially outweighed by its prejudicial effect fell within the zone of reasonable disagreement.  So, admitting it did not evince an instance of abused discretion.  

Accordingly, appellant’s issues are overruled, and the judgment is affirmed.

Per Curiam

Do not publish.ê­åøê
(footnote: 2)
     The evidence established that Appellant was driving the black Ford truck that struck Garcia and caused severe facial injuries.  Several police officers testified that the vehicle Appellant was driving was capable of causing death or serious bodily injury.  
See
 § 1.07(a)(17)(B) (defining deadly weapon).  Accordingly, Appellant challenges the sufficiency of the evidence as it pertains to the element of intent and maintains that Garcia’s injuries were the result of a “terrible accident.” 

 The court’s charge included all three culpable mental states.  Because the State alleged all three theories of mental culpability, the evidence is sufficient to support Appellant’s conviction if it establishes that he acted with any one of three mental states charged in the indictment.  
Rogers v. State
,
 
774 S.W.2d 247, 251 (Tex.Crim.App. 1989), 
cert. denied
, 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989), 
overruled on other grounds
, 
Peek v. State
, 106 S.W.3d 72, 79 (2003); 
Paschal v. State, 
35 S.W.3d 80 (Tex.App.–Texarkana 2000, no pet.).  Thus, we will review the evidence to determine if it is sufficient to establish that Appellant acted recklessly in causing Garcia’s injuries.  

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.  § 6.03(c).  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor’s standpoint.  
Id
.  Whether a defendant committed an offense with the requisite mental state is a question of fact to be determined by the trier of fact from all the evidence presented.  
Hemphill v. State
, 505 S.W.2d 560, 562 (Tex.Crim.App. 1974);
 
State v. Hart, 
905 S.W.2d 690, 693 (Tex.App.–Houston [14th Dist.] 1995, pet. ref’d).
 
 A culpable mental state may be inferred from circumstantial evidence such as acts, words, and the conduct of the accused.  
See Guevara v. State
, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004).  
See also
 
Moore v. State
, 969 S.W.2d 4, 10 (Tex.Crim.App. 1998).

According to Juan Leroy Arriaga’s testimony, when the bar closed, he and his friends went outside into the parking lot and noticed that Appellant and his two friends had returned.  He speculated they were there waiting for them to come out of the bar.  Arriaga claimed that Appellant and his friends were crossing the street toward him and his group so they crossed the street to meet them halfway.  They argued and were going to fight when Appellant and his friends ran back to their truck.  Arriaga denied that any weapons or pool cues were brandished.  Arriaga’s recollection then places him, his brother, Junior, and Tanji Garcia in the bar parking lot walking to Junior’s car.  He testified that Appellant then drove his truck over the curb of the street adjoining the bar parking lot and that as he and Junior jumped to the left, Garcia went right and was struck by Appellant.

Garcia testified that when she and her friends left the bar, Appellant and his friends approached her group and words were exchanged, but the confrontation did not escalate into a fight.  According to her version, she let go of Junior’s hand and began walking by herself to his car in the back of the bar parking lot.  A crowd was still in the bar parking lot, but she was unaware of the details of what ensued between the crowd and Appellant and his friends.

Appellant’s friends, Chad and Aaron, both testified that Arriaga’s group was brandishing pool cues and knives and chasing them.  Appellant, Chad, and Aaron ran back to the truck and backed out of an angled parking space as the crowd was yelling and hitting the truck.  According to Chad, the natural direction to drive after backing out of the angled parking space was away from Arriaga’s group.  However, both Chad and Aaron testified that Appellant turned the truck around after backing out of the space so as to face the crowd he and his friends were fleeing from.  Being unable to make a right turn onto the street because of the crowd, Appellant and his friends avoided the crowd by jumping a curb and driving through the bar parking lot.  This resulted in Garcia being struck by the truck.

From the circumstantial evidence presented, the jury could have inferred that Appellant was aware of, but consciously disregarded, the substantial and unjustifiable risk of fleeing from a crowd in a truck, jumping over a curb, and driving through the bar parking lot.  Appellant disregarded the easiest exit from the shopping center parking lot by backing out of the parking space and turning the truck around so as to face the crowd his friends claimed they were trying to avoid.  Appellant acted recklessly and created the risk of striking a pedestrian by driving toward a crowd instead of exiting the parking lot in the opposite direction, which would have been the natural direction to take.

Although the evidence is conflicting on whether weapons were brandished and who instigated the confrontation, the jury, as the trier of fact, determined that Appellant struck Garcia and that, at that time, he had the requisite mental state to be convicted of aggravated assault.  We conclude that under 
Jackson
, the evidence was legally sufficient to support Appellant’s conviction.  Issue one is overruled.

Appellant asserts that the evidence supports his conclusion that Garcia’s injuries were the result of a “terrible accident” and that he did not have the requisite criminal intent to commit the offense of aggravated assault.  From a review of the most important and relevant evidence discussed hereinabove,
(footnote: 3) we cannot conclude under 
Watson
, that Appellant’s 
conviction was “clearly wrong” or “manifestly unjust.”  Thus, the evidence is also factually sufficient to support Appellant’s conviction.  Issue two is overruled.

By his third and final issue, Appellant contends the trial court erred in overruling his objection to photographs of Garcia’s injuries based on Rule 403 of the Texas Rules of Evidence.  We disagree.  

Standard of Review–Rule 403

A trial court’s ruling in response to a Rule 403 objection is reviewed for abuse of discretion.  
State v. Mechler
, 153 S.W.3d 435, 439 (Tex.Crim.App. 2005).  The test for whether the trial court abused its discretion is whether the action was arbitrary or unreasonable.  
Id.
  We will not reverse the trial court’s ruling if it is within the zone of reasonable disagreement.  
Id
. at 440.  In determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, a court should consider (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent’s need for the evidence.  
Erazo v. State
, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004).

In determining the prejudicial effect of photographs, courts may consider the number of photographs offered; their gruesomeness, detail, and size; whether they are in color; whether they are taken close-up; whether the person in the photograph is clothed; and any other factors unique to the situation.  
Shuffield v. State
, 189 S.W.3d 782, 787 (Tex.Crim.App. 2006); 
Long v. State
, 823 S.W.2d 259, 270 (Tex.Crim.App. 1991).

Outside the jury’s presence, the trial court heard Appellant’s objections to State’s Exhibits 19 through 28 depicting Garcia’s severe facial injuries.  The objections were based on Rules 401, 402, and 403 of the Texas Rules of Evidence.
(footnote: 4)  Of the ten photographs, the trial court permitted the State to select one photograph from three separate groups showing three different angles of Garcia’s face.  The State chose Exhibits 20, 23, and 26, and Appellant’s objections to those photographs were overruled.

All three photographs are approximately three by five inches and show only Garcia’s face.  Exhibit 20 is a right center view of her face; Exhibit 23 is a frontal view of her face; and Exhibit 26 shows the left side of her face.  Although the photographs in the appellate record appear in black and white, we will assume they were presented to the jury in color.  
See Shuffield
, 189 S.W.3d at 787.  The photographs were taken by Dr. John Marchbanks just prior to performing surgery.  Dr. Marchbanks testified that he was called in to consult on Garcia’s facial injuries, but did not offer any testimony describing the injuries.

Serious bodily injury is an element of aggravated assault the State was required to prove.  § 22.02(a) (1).  The photographs were offered into evidence for the purpose of establishing that element.  Appellant, however, argues that their admission was cumulative because a paramedic and a police officer who were dispatched to the scene gave graphic descriptions of Garcia’s injuries during their testimony.  He further urges that Garcia’s injuries were obvious when she testified.  Appellant contends that the probative value of the photographs was outweighed by their prejudicial effect.  However, as the State points out, the photographs actually served to soften the testimonials of Garcia’s injuries.  

The paramedic testified that he had never seen trauma like that sustained by Garcia.  He described her face as disfigured, “literally ripped apart.”  He continued that her features were unrecognizable.  He did not know where her mouth was and her nose was “just shredded.”  He didn’t know if her eye had been ripped out.  One of the responding police officers testified that Garcia’s face looked like it “exploded.”  The objected-to photographs, on the other hand, depict Garcia’s face cleaned up in preparation for surgery.  They show Garcia’s injuries in a less gruesome manner than described by the testimony of the paramedic and police officer.

Photographs provide powerful visual evidence of an offense.  
See Sonnier v. State
, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995).  A trial court does not abuse its discretion in admitting into evidence gruesome photographs of a victim.  
Id
.  We conclude the photographs were relevant and were not overly gruesome, and the trial court did not abuse its discretion in admitting them.  Issue three is overruled.

Consequently, the trial court’s judgment is affirmed.

Patrick A. Pirtle

      Justice

Do not publish.

FOOTNOTES
1:
Appellant clearly argued misidentification in his closing argument: “It could be today, it could be next week, it could be next year, but if we don’t do our job it’s going to happen.  Somebody is going to be misidentified and somebody is going to spend some time in jail because somebody else sold some crack to an undercover officer.”  

2:
We also note that the officer was asked on re-direct by the State when he had obtained the photograph of appellant to which he replied, “It was around when the - - when we made these transactions.”  No objection was made to this testimony.  

2:
3:
4: