**Affirmed and Opinion Filed July 30, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01018-CR

**STEPHEN COLEMAN SHOCKLEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-82727-09**

## OPINION

Before Justices Moseley, O'Neill, and FitzGerald
Opinion by Justice FitzGerald

A jury convicted appellant of continuous sexual abuse of a child under fourteen years of age and sentenced him to ninety-nine years' imprisonment. In three issues on appeal, appellant complains the trial court erred in admitting extraneous offense testimony. Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

### BACKGROUND

Appellant's niece, E.B., accused him of sexually assaulting her when she stayed with his family on vacations and holidays. E.B. was approximately five years old when the abuse began and fourteen when she testified at trial.

During voir dire, defense counsel predicted that he might question E.B.'s truthfulness. He asked the venire to articulate the circumstances under which a child might make a false allegation of sexual abuse. After the panel identified several circumstances, defense counsel also

suggested that a child might fabricate such allegations when the child "hears about someone else this has happened to, and . . . they add it into their own reality." Counsel then told the jury an anecdote about his niece fabricating things about her deceased father that could not have actually happened.

In opening statement, defense counsel described appellant as a twenty-year veteran, decorated soldier, good father, and a good husband. He told the jury that E.B. had a troubled early life, and characterized her version of events as "a strange set of facts," because she alleged she was molested while others were present. Counsel told the jury that the allegations had come to light during a period of family turmoil, and hypothesized that E.B.'s father and grandmother had suggested the abuse to her.

E.B. testified that the abuse first occurred on a camping trip with fathers, daughters, and nieces during the time appellant lived in Kansas. While E.B.'s cousins were sleeping on the bunk bed above her, appellant slid his hand under E.B.'s pants and touched her "private parts." On other occasions, appellant would lie on the bed between E.B. and appellant's daughter and tell them a bedtime story. Appellant would rub E.B.'s private parts when his daughter fell asleep.

Appellant moved to Alabama, and E.B. and her family visited him there. Appellant again touched E.B.'s private parts under her clothes. Then, appellant moved to McKinney, Texas. Between March and December 2008 in McKinney, the abuse happened repeatedly. Sometimes, they would watch a movie and appellant would wait for his daughter to fall asleep and then put his hand under E.B.'s clothes and rub her "tee tee." On other occasions, appellant would get in the middle of the children on the bed and read them a story. When appellant's daughter fell asleep appellant would rub E.B.'s private parts.

E.B. finally disclosed the abuse when her father asked if anyone had touched her. During a forensic and sexual assault exam, E.B. told the sexual assault nurse that appellant had touched

–2–

her on and inside her "front part" with his hands and that it had occurred more than once at appellant's house in McKinney.

On cross-examination, defense counsel asked E.B. how many times her father had asked if someone had touched her, and she agreed it had probably been more than five times. He also asked E.B. if her grandmother had told E.B. that she had been molested when she was a child. E.B. testified that she did not remember any such conversation with her grandmother.

During cross-examination of the forensic examiner, defense counsel elicited the examiner's agreement that E.B. had probably had a troubled early life because her birth mother had not been stable and let E.B. wander away. As a result, her father sought and obtained custody of her. Defense counsel also asked a series of questions about children who make false allegations of sexual abuse, and whether a child with a troubled past would be more inclined to fabricate such allegations. Counsel also asked whether a child sometimes gives a positive response to a parent's inquiry about abuse just to please the parent. The examiner agreed with counsel that a child in a troubled environment might make false allegations of sexual abuse.

E.B.'s grandmother also testified. She described a trip to Kansas when E.B. was almost nine. The family was at a water park, and she observed E.B. in appellant's lap sitting unusually still. This gave her a "funny feeling." Later, she saw appellant stroking E.B.'s back and buttocks after a bath. She confronted appellant about what she had seen, and appellant expressed surprise that his behavior might be considered inappropriate.

When the State rested, appellant called his daughter to testify. She testified that she had never seen her father do anything to E.B. when E.B. was at their house. Appellant's daughter further testified that she and E.B. would argue over the fact that she had a father who loved her but E.B. did not.

After the defense rested, the State called appellant's former foster daughter, Kristen Chandler, to testify. Defense counsel objected to the testimony on several grounds, including relevance, rule 403, and rule 404(b). These objections were overruled.

Chandler was thirty years old at the time of trial. Chandler testified that she was placed in the foster care of appellant and his former wife when she was thirteen years old. During that time, appellant came into her bedroom while she was sleeping and touched the front part of her genitals with his hand. The abuse progressed to oral sex and intercourse until she was sixteen or seventeen years old. Chandler never reported the abuse because she had made friends in the area and did not want to be removed from foster care.

## DISCUSSION

Appellant asserts the trial court erred in admitting Chandler's extraneous offense testimony because it was not relevant or admissible under Rule 404(b) and the prejudicial effect of the testimony outweighed any probative value. We review a trial court's decision to admit evidence under Rules 404(b) and 403 for an abuse of discretion.[1] "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld."[2] If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision.[3]

### *Relevance and Admissibility Under Rule 404(b).*

Rule 404(b) expressly provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant in order to show he acted in conformity therewith.[4] Rule 404(b) codifies the common law principle that a defendant should be tried only

---

[1] *See De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

[2] *Id.*

[3] *Id.*

[4] *See* TEX. R. EVID. 404(b).

–4–

for the offense for which he is charged and not for being a criminal generally.[5] But the rule provides a list of exceptions to the general rule of inadmissibility, and states that extraneous offense evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[6] The list of exceptions providing for the admission of such evidence, however, is nonexhaustive.[7]

Here, the trial court allowed the extraneous offense testimony to rebut a defensive theory of fabrication. The court of criminal appeals has stated that rebuttal of a defensive theory is one of the permissible purposes for which relevant evidence may be admitted under rule 404(b).[8] A defendant's presentation of a defensive theory in an opening statement, for example, may open the door to the admission of extraneous offense evidence to rebut the defensive theory.[9] Extraneous offenses are admissible to rebut defensive theories raised by the testimony of a defense witness during direct examination or a State's witness during cross-examination.[10] Furthermore, evidence of extraneous offenses in sexual assault cases is properly admitted under rule 404(b) to rebut a defensive theory of retaliation or fabrication or that the defendant is "the innocent victim of a 'frame-up' by the complainant or others."[11] "In such a situation, the extraneous misconduct must be at least similar to the charged one and an instance in which the 'frame-up' motive does not apply."[12]

---

[5] *Rogers v. State*, 853 S.W.2d 29, 32 n.3 (Tex. Crim. App. 1993); *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining defendant is generally to be tried only for the offense charged, not for any other crimes).

[6] TEX. R. EVID. 404(b).

[7] *See Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005).

[8] *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

[9] *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).

[10] *See Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005); *Ransom v. State,* 920 S.W.2d 288, 301 (Tex. Crim. App. 1996).

[11] *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002); *see also Bass*, 270 S.W.3d at 563 & n.8.

[12] *Wheeler*, 67 S.W.3d at 888 n.22; *see also Dennis v. State*, 178 S.W3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Appellant asserts that nothing about the extraneous offense testimony refutes the defense's contention that E.B. was not truthful. He further asserts that Chandler's testimony about "substantially different" events that occurred seventeen years ago served only to sully the character of appellant and persuade the jury that he was acting in conformity with a particularized character trait. We disagree.

There is no question that the defensive theory of the case centered on the veracity of E.B.'s allegations. Indeed, appellant describes the "sum and substance" of the case as involving the "truthful nature of the victim's allegations." Counsel suggested that E.B. fabricated the allegations, and that such fabrication resulted from a troubled past, from suggestive comments made by her father and grandmother, and from E.B.'s need for acceptance in the family. This defensive theory was introduced during voir dire, repeated throughout trial, and argued in closing argument. During closing argument, defense counsel argued that it was implausible that E.B. had been molested while appellant's daughter was present. Counsel further argued that if someone tells a child something repeatedly, they begin to believe it "and then it becomes not so hard to repeat the story back."

Under these circumstances, we cannot conclude the evidence was not relevant. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[13] This definition is necessarily broad.[14] Even evidence that is inadmissible character evidence may be relevant.[15] Extraneous offense evidence is admissible if

---

[13] TEX. R. EVID. 401.

[14] *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on rehearing).

[15] *Id.* at 386.

it has some logical relevance aside from character conformity.[16] A similar sexual assault against another unrelated child has a tendency to show that E.B.'s allegations were less likely to have been fabricated. Because the extraneous evidence tends to make the defensive claim of fabrication less probable, the evidence has some relevance aside from character conformity.

We are similarly unpersuaded by appellant's assertion that the extraneous offense was not sufficiently similar to the charged offense. An exacting degree of similarity is not required.[17] The similarities between the two offenses must only be such that the evidence is still relevant.[18] Here, the two offenses involved young girls in appellant's home who were inappropriately touched by appellant as they prepared for sleep or while they were asleep. This similarity is sufficient to survive the test of relevance.

Because the extraneous evidence was relevant and admissible to rebut the defensive claim of fabrication, the trial court did not err in refusing to exclude it. Appellant's first two issues are overruled.

### *Probative Value and Prejudicial Effect.*

Appellant also contends the trial court erred in admitting the testimony because the prejudicial effect outweighed the probative value. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[19] In conducting a Rule 403 balancing test, courts consider factors which include, but are not limited to: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time

---

[16] *Bass*, 270 S.W.3d at 557.

[17] *See Dennis*, 178 S.W.3d at 179.

[18] *See Thomas v. State*, 126 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2003, pet ref'd).

[19] TEX. R. EVID. 403.

needed to develop the evidence; and (4) the proponent's need for the evidence.[20] The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial.[21] We should reverse the trial court's balancing determination "rarely and only after a clear abuse of discretion."[22] In addition, because rule 403 permits the exclusion of admittedly probative evidence, "it is a remedy that should be used sparingly," particularly in "sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant."[23]

The rule 403 factors weigh in favor of admission. The extraneous offense evidence was probative to rebut appellant's defensive theories that appellant was not the type of person who would sexually abuse a child and that the abuse allegations were fabricated. The testimony was also probative as to the veracity of the complainant's testimony. Moreover, the State's need for such evidence was considerable. There was no physical evidence of abuse to corroborate the complainant's testimony, and the defense painted a picture of a troubled young girl with a motive to fabricate her testimony. The extraneous offense evidence pertained to an incident that was very similar to the charged offense — touching the victim's private parts while she was asleep or preparing for sleep. Thus, the extraneous offense evidence suggests that E.B.'s allegations did not result from a troubled early childhood, suggestions from her grandmother, or prodding by her father. In addition, E.B. and appellant's foster daughter had never met. Their accounts of abuse, however, were too similar to explain by chance or false accusation. Although the extraneous offense testimony had the potential to impress the jury in an indelible way, there is no indication

---

[20] *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

[21] *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996).

[22] *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991) (op. on reh'g).

[23] *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

the jury was confused or distracted from the main issue. The testimony was relatively brief. The trial court gave the jury a limiting instruction. Weighing these considerations, we cannot say the trial court abused its discretion in concluding that the probative value of the extraneous offense evidence was not outweighed by the danger of unfair prejudice. Appellant's third issue is overruled.

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121018F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEPHEN COLEMAN SHOCKLEY,
Appellant

No. 05-12-01018-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-82727-09.
Opinion delivered by Justice FitzGerald.
Justices Moseley and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 30, 2014