PD-1379-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/22/2014 2:38:00 PM
Accepted 12/29/2014 2:17:36 PM
ABEL ACOSTA
CLERK

## NO. PD-1379-14

## IN THE TEXAS COURT OF CRIMINAL APPEALS

## AUSTIN, TEXAS

_____

### SAMUEL AGUILAR

### Petitioner,

### v.

### THE STATE OF TEXAS

_____

### STATE'S REPLY TO PETITION FOR DISCRETIONARY REVIEW

_____

STEVEN E. REIS
State Bar No. 16757960
Email: steven.reis@matagorda.tx.us
Matagorda County Courthouse
1700 7th Street, Suite 325
Bay City, Texas 77414
Telephone: (979) 244-7657
Telecopier: (979) 245-9409

ROBINSON C. RAMSEY
State Bar No. 16523700
Email: rramsey@langleybanack.com
LANGLEY & BANACK, INC.
Trinity Plaza II, Suite 900
745 E. Mulberry
San Antonio, Texas 78212
Telephone: (210) 736-6600
Telecopier: (210) 735-6889

ATTORNEYS FOR THE STATE OF TEXAS

_____

FILED IN
COURT OF CRIMINAL APPEALS

December 29, 2014

ABEL ACOSTA, CLERK

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

QUESTIONS PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . v

    QUESTION ONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Whether the trial court was within its discretion to admit testimony about Aguilar's assaulting his girlfriend during an argument about her sexual involvement with the victim.

    QUESTION TWO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Whether the trial court was within its discretion to admit into evidence photographs describing the nature of Aguilar's physical assault on his girlfriend during his argument with her about her sexual involvement with the victim.

    QUESTION THREE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Whether the evidence, when viewed in the light most favorable to the verdict, is legally sufficient to support Aguilar's conviction because that evidence confirms that a rational jury could have found him guilty of the offense charged.

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.    The judge rightfully admitted testimony of Aguilar's assaulting his ex-girlfriend while arguing about her sexual relations with the victim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    The trial court rightfully admitted photographs of Aguilar's assault on his girlfriend, whom he accused of having had sex with the victim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    III.    The evidence is legally sufficient to support Aguilar's conviction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii

# INDEX OF AUTHORITIES

**CASES**:

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010) . . . . . . . . . . . . 5, 6

*Butler v. State,* 872 S.W.2d 227 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . 1

*Heidelberg v. State,* 144 S.W.3d 535 (Tex. Crim. App. 2004). . . . . . . . . . . 3

*Jackson v. Virginia,* 443 U.S. 307 (1979) .. . . . . . . . . . . . . . . . . . . . . 5, 6, 8

*Laster v. State,* 275 S.W.3d 512 (Tex. Crim. App. 2009).. . . . . . . . . . . . . 8

*Montgomery v. State,* 810 S.W.2d 372 (Tex. Crim. App. 1990). . . . . . . . . 1-3

*Shuffield v. State,* 189 S.W.3d 782 (Tex. Crim. App. 2006). . . . . . . . . . . 4, 5

*Wilson v. State,* 71 S.W.3d 346 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . 4


**STATUTES:**

TEX. CODE CRIM. PROC. art. 38.04 (Vernon 1979) . . . . . . . . . . . . . . . . . . . . 6


**RULES:**

TEX. R. APP. P. 33.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. R. EVID. 103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. R. EVID. 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TEX. R. EVID. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

TEX. R. EVID. 404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

## STATEMENT REGARDING ORAL ARGUMENT

The State does not believe that oral argument would materially assist this Court in reaching its decision. Therefore, the State does not request oral argument,

## STATEMENT OF THE CASE

This is a felony case in which a jury found Appellant Samuel Aguilar guilty of murder and assessed his punishment at life in prison. *6 RR 35–36, 144.*

# QUESTIONS PRESENTED FOR REVIEW

### QUESTION ONE
### (Extraneous Offense)

Whether the trial court was within its discretion to admit testimony about Aguilar's assaulting his girlfriend during an argument about her sexual involvement with the victim.

### QUESTION TWO
### (Photographs)

Whether the trial court was within its discretion to admit into evidence photographs describing the nature of Aguilar's physical assault on his girlfriend during his argument with her about her sexual involvement with the victim.

### QUESTION THREE
### (Evidentiary Sufficiency)

Whether the evidence, when viewed in the light most favorable to the verdict, is legally sufficient to support Aguilar's conviction because that evidence confirms that a rational jury could have found him guilty of the offense charged.

# ARGUMENT

## I. The judge rightfully admitted testimony of Aguilar's assaulting his ex-girlfriend while arguing about her sexual relations with the victim.

"When a party attempts to adduce evidence of 'other crimes, wrongs or acts,'in order to preserve error on appeal, the opponent of that evidence must object in a timely fashion." *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990). Aguilar's failure to do so waived any alleged error in the admission of this testimony. *See Butler v. State*, 872 S.W.2d 227, 237 (Tex. Crim. App. 1994) ("A reasonably specific and timely objection is necessary to preserve error for appellate review.").

Regardless, this testimony was relevant to demonstrate Aguilar's state of mind as well as his motive for murdering the victim because it showed that he was angry over the prospect of his girlfriend's having had sexual relations with Sutton. *See Montgomery*, 810 S.W.2d at 382. Furthermore, this argument took place only a short time before Sutton was found murdered, and Aguilar (finally) admitted that he had been in Sutton's house on the day of the murder and had seen Sutton's corpse there.

Evidence of "other crimes, wrongs, or acts" is admissible if it has relevance "apart from its tendency 'to prove the character of a person in order to show that he acted in conformity therewith.'" *Montgomery*, 810 S.W.2d at 387 (citing TEX. R. EVID. 404(b)). Therefore, the prosecution "may introduce

such evidence where it logically serves to make ... more probable or less probable an elemental fact; where it serves to make ... more probable or less probable an evidentiary fact that inferentially leads to an elemental fact; or where it serves to make ... more probable or less probable defensive evidence that undermines an elemental fact." *Id.*

Prime examples of permissible purposes to which extraneous evidence of crimes, wrongs, or acts may be put include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Montgomery*, 810 S.W.2d at 387 (citing TEX. R. EVID. 404(b)). "Extraneous offense evidence that logically serves any of these purposes is relevant beyond its tendency to prove the character of a person to show that he acted in conformity therewith. It is therefore admissible, subject only to the trial court's discretion nevertheless to exclude it if its probative value is substantially outweighed by the danger of unfair prejudice...." *Montgomery*, 810 S.W.2d at 387 (citing TEX. R. EVID. 403).

Rule 403's provision that evidence "may" be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, "simply means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Montgomery*, 810 S.W.2d at 389. After conducting the probative-versus-prejudical balancing

2

test, the trial court "must be given wide latitude to exclude, or, particularly in view of the presumption of admissibility of relevant evidence, not to exclude misconduct evidence as he sees fit." *Id.* at 390. In this regard, "[s]o long as the trial court thus operates within the boundaries of its discretion, an appellate court should not disturb its decision, whatever it may be." *Id.*

In applying this abuse-of-discretion standard, "an appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391. Here, the trial judge was well within that zone in determining that the extraneous-offense evidence was relevant to issues such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of credibility. *Montgomery*, 810 S.W.2d at 387. Therefore, the trial judge's discretionary decision is not subject to being second-guessed on appeal.

## II. The trial court was within its discretion to admit photographs of Aguilar's assault on his girlfriend, whom he accused of having sex with the victim.

Aguilar has waived his complaint about the admission of the photographs of the physical injuries he inflicted on his ex-girlfriend because his objection at trial (that the photographs depicted an unadjudicated offense) does not match his complaint on appeal (that the photographs were unfairly prejudicial). *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004)

3

(citing Tex. R. App. P. 33.1(a)(1)(A) and Tex. R. Evid. 103(a)(1)) ("[I]t is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial."); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (holding that to preserve a complaint for appellate review "the point of error on appeal must comport with the objection made at trial").

Regardless, the photographs were not unfairly prejudicial, but instead were relevant to demonstrate the nature of the injuries Aguilar inflicted, which in turn was relevant to show his state of mind and motive for murdering the victim. Tex. R. Evid. 401.

Aguilar complains that the photographs were not necessary because the jury had already heard testimony describing the injuries. But "[t]he fact that the jury had also heard testimony regarding the injuries depicted does not necessarily reduce the relevance of the visual depiction." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Texas Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. at 786–87 (citing Tex. R. Evid. 401). It is self-evident that seeing what something looks like is more informative that hearing what it looks like. Therefore, the trial court was within its discretion in admitting the

photographs, which provided a more accurate description of the injuries that Aguilar had inflicted.   *See Shuffield*, 189 S.W.3d at 386 ( "The admissibility of a photograph is within the sound discretion of the trial judge.").

Rule 403 "allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.  However, this rule "favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Shuffield*, 189 S.W.3d at 787.

## III. The evidence is legally sufficient to support Aguilar's conviction.

In a legal-sufficiency review, courts examine the evidence in the light most favorable to the verdict to determine whether "*any* rational fact finder could have found guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Brooks v. State*,  323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a

5

reasonable doubt.").

The *Jackson* legal-sufficiency standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *See* TEX. CODE CRIM. PROC. art. 38.04 (Vernon 1979) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony …"); *Brooks*, 323 S.W.3d at 899 ("Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony."). Aguilar's highlighting the testimony he likes while glossing over the evidence that goes against him contravenes these principles. Some of the evidence he did not like included the following facts, which connected him to the crime:

- He threatened that "before I go to court, before I go down, somebody's going down with me" and that he "was going to do something bad before he went into prison" and that it would be so shocking that it would make front-page news. *5 RR 21–23, 45, 51–52, 57–60. 5 RR 21–23.*

- He knew Sutton and was at Sutton's house frequently. *3 RR 142, 145.*

6

- The bloodstains on Aguilar's T-shirt, shoe, baseball cap, and bike matched Sutton's blood. *3 RR 239–40, 249–50, 259–60; 4 RR 46, 143, 146, 176, 205–06, 207–08, 229–31, 239–43.*

- His bike and T-shirt were found at the house of his brother Benny, who lived "within spitting distance" of Sutton. *3 RR 239–40, 249–50; 4 RR 46, 143, 146.*

- A bloodstain on his brother Benny's front door matched Sutton's blood. *3 RR 239.*

- Aguilar initially lied about having been at Sutton's house on the day of the murder, and did not admit this until he had been confronted with incriminating evidence. *3 RR 262, 264.*

- Upon being confronted with this incriminating evidence, Aguilar altered his story "every step of the way" in an attempt to conform with each new evidentiary increment, and continued to make changes in his story to dovetail with each additional bit of information the investigating offers fed him. *4 RR 102, 114.*

- His story about having tripped over Sutton's body in the dark was suspect because one of the window blinds was open and there was a streetlight right outside. *4 RR 10–11, 13.*

- After allegedly discovering Sutton's body, Aguilar fled the house and did not tell anyone about what he had found. *4 RR 10–11.*

- Aguilar claimed that the only part of the house he had been in was the livingroom area, but there was blood all over other parts of the house, including bloody footprints that matched the size and configuration of his shoes. *4 RR 15–16*

7

- He had no explanation for how the blood had gotten on his baseball cap. *4 RR 8*.

- He claimed that the blood on his shirt came from having wiped his hands after touching Sutton to try to get him to respond, but the blood on Aguilar's shirt was in spatters, not smears. *4 RR 59*.

- The configuration and position of the blood on Aguilar's shirt was not consistent with his story, but *was* consistent with his having struck Sutton and cast off blood onto the back of the shirt from the object he used to beat Sutton. *4 RR 61*.

- About a week before Sutton's murder Aguilar had accused his girlfriend of having had oral sex with Sutton for money and had become angry and physically violent with her. *4 RR 178, 182, 184–85*.

A legal-sufficiency analysis requires courts to view all of the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Aguilar tries to rearrange this standard to view the evidence in a manner he deems most favorable to himself rather than the verdict by downplaying—or in some cases, outright ignoring—the evidence against him. But under the legal-sufficiency standard, appellate courts do not re-evaluate the weight and credibility of the evidence; they only ensure that the jury reached a rational decision. *See Laster*, 275 S.W.3d at 517 ("During

8

such a review, an appellate court must not usurp the role of the factfinder. Appellate courts are ill-equipped to weigh the evidence."). Therefore, as long as the jury rationally arrived at its verdict, as it did here, there can be no reversal for alleged legal insufficiency. *Id.*

## PRAYER

For these reasons, the State asks this Court to deny the petition for discretionary review.

Respectfully submitted,

STEVEN E. REIS
State Bar No. 16757960
Email: steven.reis@matagorda.tx.us
Matagorda County Courthouse
1700 7th Street, Room 325
Bay City, Texas 77414
Telephone: (979) 244-7657
Telecopier: (979) 245-9409

*/s/RobinsonC. Ramsey*
ROBINSON C. RAMSEY
State Bar No. 16523700
Trinity Plaza II, Suite 900
745 E. Mulberry
San Antonio, Texas 78212
Telephone: (210) 736-6600
Telecopier: (210) 735-6889

ATTORNEYS FOR THE STATE OF TEXAS

9

**_____CERTIFICATE OF COMPLIANCE**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), the State certifies that the number of words in the State's Reply to Petition for Discretionary Review, including its headings, footnotes, and quotations, is: **1942**.

*/s/Robinson C. Ramsey*
ROBINSON C. RAMSEY

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing document was deposited in an official depository of the United States Postal Service, properly addressed to:

Samuel Aguilar
Coffield Unit - TDC #1631736
2661 FM 2054
Tennessee Colony, Texas 75884

Lisa McMinn
State Prosecuting Attorney
Email: information@spa.texas.gov
P.O. Box 13046
Austin, Texas 78711–3046

on 22 December 2014

*/s/Robinson C. Ramsey*
ROBINSON C. RAMSEY

W:\lbclient\07513\0064\L0929870.WPD