

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00430-CR

KEDRIC YOUNG                                                    APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NO. 1320830D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Kedric Young appeals his conviction and forty-two year sentence for murder. We affirm.

## Background Facts

On the afternoon of March 8, 2013, Appellant was at his cousin Tara Bowser's house. Darrell Page came by the house to ask Bowser to call his ex-

---

[1]See Tex. R. App. P. 47.4.

girlfriend for him. Page had been drinking. Appellant claims that Page became agitated when Bowser could not get Page's ex-girlfriend on the phone. Bowser and her son, who had also been present, denied that Page was causing any problems in the house.

Bowser testified that Appellant made a phone call to his friend Maurice Hamilton. Appellant went outside, and after Hamilton arrived, Appellant came back in the house with a gun in the waistband of his shorts. Appellant told Page that he had to leave because Bowser was afraid of him. Page and Appellant left the house, and Bowser heard gunshots. Appellant claimed that Page had threatened to shoot him and that Appellant had shot in self-defense. Appellant gave the gun back to Hamilton and fled to Killeen, where he was eventually found and arrested.

A jury found Appellant guilty of murder and assessed punishment at forty-two years' incarceration. The trial court sentenced him accordingly. Appellant then filed this appeal.

**Standard of Review**

In his sole issue, Appellant argues that the trial court erred by admitting evidence of Appellant's alleged gang affiliation in the guilt/innocence phase of the trial. An appellate court reviews a trial court's decision to admit evidence for an abuse of discretion. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). A trial court abuses its discretion in admitting evidence if that decision

2

falls outside the wide zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

Evidence may be excluded under Texas Rule of Evidence 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. But this rule also favors the admission of relevant evidence, and such evidence is presumed to be more probative than prejudicial. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1056 (2006). Relevant evidence is that which has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable. *See* Tex. R. Evid. 401, 403; *Hawkins v. State*, 871 S.W.2d 539, 541 (Tex. App.—Fort Worth 1994, no pet.) (citing *Montgomery*, 810 S.W.2d at 387). In a rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

3

## Discussion

Appellant testified that Page had been "slightly inebriated" and had become "aggravated and agitated" while in the house. According to Appellant, Page went outside and made a call asking someone to "bring him a gun because he was fixing to lay everybody down in the house." Appellant claimed that he then grabbed a gun from Hamilton's jacket, which he had left on the front porch. Appellant said,

> Then we were out on the porch, we got to wrestling. And I pushed him up off of me. I pushed him up off of me like this. And once he made it to like the middle of the yard, I was standing—by that time, I was standing by the dirt that's at the bottom of the stairs, he made it in the middle of the yard. And he reached—I don't know what he was reaching for, but he reached. And when he reached, he stepped towards me, he said, You're going to be the first one— excuse my French, you're going to be the first mother fucker I kill before I get everybody else.
>
> Q. Then what happened?
>
> A. And when he reached, that's when I—my first shot, I shot at his hand.

Appellant testified that he fired once more and then fled. When asked why he fled, he said, "I was—honestly, I was nervous. That was my first time being in a situation like that besides when I got shot myself."

On cross-examination, Appellant again asserted that Page had been the aggressor and that that had been the first time that he had been forced to defend himself "[i]n a matter like this." He testified that he did not call Hamilton to bring a gun but that he knew Hamilton carried one. Appellant testified that Hamilton was

4

one his best friends.  At that point, the State requested to approach the bench.

The following bench conference took place:

     [THE STATE]:  At this point I think that this relationship with [Hamilton] of him being in a gang together, his past assaults, his—I've got photos of him with what appears to be a weapon.  I've got—

     THE COURT:  I'm not going into past assaults.  If he's a gang member, you can go into gang member—excuse me?

     [APPELLANT]:  I'm sorry?

     [THE STATE]:  Well, Your Honor, he did say this is the first time he has had to defend himself and he's got assault convictions.

     [APPELLANT]:  He said the first time he had to defend himself in this way.

     THE COURT:  Well, it—if it's according to how he answers the question of what else we'll go into, okay.

     [THE STATE]:  Okay.

     THE COURT:  But I'm not letting you go into—I told you about the gun, is that what you're talking about?

     [THE STATE]:  I've got one of him from—of him holding a gun—

     THE COURT:  I'm not going to let you go into that at this time.

     [APPELLANT]:  Judge, I may object—

     THE COURT:  It may get admissible, according to his testimony.

     [THE STATE]:  What about his gang affiliation?

     THE COURT:  I said I was going to let you go into that.

[APPELLANT]: I would object to that, Judge. I have Supreme Court case that it's not admissible just because it's the first time he defended himself, doesn't mean they have a—can get into that.

THE COURT: Well, I'm letting them.

[APPELLANT]: Over strong objection from Defense. Over Defense objection.

THE COURT: I asked when they ask the question, you've got your objection. If he—

[THE STATE]: One other thing, Judge. I would also like to ask him—they've already gone into the fact that he got shot a year ago. He told the police then that they had gone over to fight some people that would cause—

THE COURT: You can go into that the excuse of how he was shot, yes.

[THE STATE]: And then, I guess, that [Hamilton] retaliated on his behalf?

THE COURT: I think that's admissible. I think that's the reason I think it is.

The State then asked Appellant if he and Hamilton were in a gang called "2 Trill." Appellant timely stated, "Your Honor, we object to that," without stating any ground for the objection. The trial court overruled the objection. Appellant denied that 2 Trill was a gang. He said that it was "[j]ust a group of people, a group of guys that we started off being a rap group. That's what we've been trying to do, rap." Cross-examination continued concerning other members of 2 Trill, whether Appellant flashed gang signs, and whether 2 Trill was a Bloods-affiliated gang. The State asked,

Q. You post Facebook photos of yourself wearing red, right?

A. Yes, ma'am, when I was in Killeen, Texas.

Q. And holding up a sign. Do you remember what sign you were holding up?

. . . .

A. Oh, that's a B.

Q. A B?

A. Yes, ma'am.

Q. And these pictures that we talked about, what color are you wearing when you're holding up a B?

A. Red.

Q. Red bandana?

A. Yes, ma'am, but I was not in Fort Worth, Texas. I [was] in Killeen, Texas, having fun with my cousins.

Q. And where were you wearing the bandana?

A. On my face.

Q. Around your mouth, right?

A. Yes, ma'am.

Appellant did not make objections to this continued questioning.

The State then offered into evidence two photographs of Appellant's tattoos—one reading "2 Trill" and another of an AK-47 rifle that reads "Trill Life"—and a photograph of Appellant wearing a red bandana over his face and making

7

a "B" sign with his hand.[2]  Appellant objected, stating, "These are prejudicial.  It outweighs its probative value.  Same objection I made before on the gang membership talk."  The photographs were admitted over Appellant's objection.

The State questions whether Appellant has preserved his rule 403 objection because it claims Appellant did not object under rule 403 during the bench conference.  As Appellant concedes on appeal, his objection in the bench conference was not "particularly specific."  A general or imprecise objection is sufficient to preserve error only if the legal basis for the objection is obvious to the trial court and opposing counsel.  *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006).  When Appellant objected to the photographs, he stated he was making the "[s]ame objection [he] made before."  Appellant did not object to the questions regarding the photographs of him wearing a red bandana and flashing a Bloods gang sign.  To preserve error, a party must continue to object each time the objectionable evidence is offered.  *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.).  A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of

---

[2]The "B" sign is associated with the Bloods gang.  Appellant denied that 2 Trill was a Bloods-affiliated group.

8

ruling. *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998), *cert. denied*, 131 S. Ct. 905 (2011)); *Lane v State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). The testimony regarding what the pictures depicted concerned the same evidence as the photographs, namely, Appellant's alleged gang affiliation. Because Appellant did not object to that testimony, any error in admitting the photographs was harmless. *See Leday*, 983 S.W.2d at 718 (stating that improper admission of evidence is harmless when other such evidence is admitted without objection).

Further, the evidence was not so prejudicial that it outweighed its probative value. Appellant testified at trial that he had shot Page in self-defense because Page was being aggressive and he had reached for something in his pocket that Appellant had believed was a gun. Appellant claimed that he had been scared because he had never had to defend himself in such a way. The photograph of Appellant's rifle tattoo and his face covered with a bandana tend to show that Appellant was not unfamiliar with guns or intimidating others. His testimony that 2 Trill member Hamilton carried a gun supported the State's theory that Appellant had called Hamilton to the house knowing that he would be armed, undercutting Appellant's stated defense. Thus, the photographs and testimony tend to make Appellant's self-defense theory less probable and are therefore relevant. *See* Tex. R. Evid. 401, 403; *Shuffield*, 189 S.W.3d at 787. The State's need for such relevant evidence weighed in favor of their admission over any tendency of

9

the evidence to suggest a decision on an improper basis, to distract the jury from the main issues, or to be given undue weight by the jury. *See Gigliobianco*, 210 S.W.3d at 641–42. The trial court therefore did not abuse its discretion by admitting the evidence.[3] We overrule Appellant's issue.

## Conclusion

Having overruled Appellant's issue, we affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: MEIER, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 25, 2015

---

[3]Appellant argues that the record does not show that the trial court conducted the required balancing test. However, Rule 403 does not require that the trial court perform the balancing test on the record. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).